(67 Misc. Rep. 390.)

HESS et al. v. INVESTORS' & TRADERS' REALTY CO.

(Supreme Court, Appellate Term.   May 24, 1910.)

BROKERS (§ 49*)—COMMISSIONS—WHEN EARNED.

Where a broker was employed to procure a purchaser of a single plot of ground, and he procured a purchaser who contracted to purchase the premises designated as parcels A and B, subject to the right to reject the title provided the two parcels were not contiguous, the broker was entitled to his commission, though the owner could not convey the two parcels as one plot.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70-72; Dec. Dig. § 49.*]

Appeal from City Court of New York, Trial Term.

Action by Nathaniel J. Hess and another against the Investors' & Traders' Realty Company. From a judgment dismissing the complaint at the close of plaintiff's case, and from an order denying a motion to set aside the dismissal and for a new trial, plaintiffs appeal. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and PAGE, JJ.

Henry V. Rothschild (Louis Lande, of counsel), for appellants.

Charles L. Hoffman (Henry A. Friedman, of counsel), for respondent.

LEHMAN, J.   The plaintiff was employed by the defendant to sell a piece of property, Nos. 144 to 150 West Twenty-Seventh street. Plaintiff introduced to defendant a party desirous of purchasing a parcel of land in that neighborhood 40 or more feet in width. The property which defendant desired to sell was covered by two old

buildings, but apparently neither the defendant nor the proposed purchaser considered the buildings of any particular value. Plaintiff introduced the parties at the office, and after some negotiations apparently brought the minds of the parties together on all the terms of purchase, and the purchaser and seller agreed to meet the next day to sign the contract. The next day the seller and the purchaser and their respective attorneys met together. The purchaser's attorney examined the contract and refused to approve of it, as his client was buying one piece of property, and the proposed contract described two parcels, designated as A and B, the dimensions of which were monumented from different corners. An additional clause was then inserted in the contract which provided that:

"The party of the first part [the vendor] covenants that parcels A and B are adjoining and contiguous. If such, however, be not the fact, the party of the second part shall have the right to reject title and refuse to perform this agreement on such ground, and in such event the party of the second part shall be entitled to receive from the party of the first part the sum of $2,000 paid hereon, the Title Company's fee for examination of title, and $100 for attorney's services."

It further appears from the contract that at the time the defendant did not hold title to the property, but held two separate contracts for the parcels covered thereby. The plaintiff testified unequivocally that the property was given to him for sale as a plot, though he knew that there were old buildings upon it, and the purchaser testified unequivocally that "they" (meaning apparently the defendant's officers) told him that "they had 45x100 feet to sell." The defendant put in no evidence to contradict this testimony, and the complaint was dismissed at the close of the plaintiff's case, on the ground that plaintiff had produced a party not willing to make a contract for the purchase of the property, but who merely made a contract under which he had an option of purchase, which he thereafter refused to exercise.

It seems to me that the dismissal of the complaint was error. The question of the defendant's liability is to be considered from the standpoint of what the broker engages to do. Alt v. Doscher, 102 App. Div. 344, 92 N. Y. Supp. 439, affirmed on opinion below 186 N. Y. 566, 79 N. E. 1100. His testimony is fairly open to the inference that he was employed to procure a purchaser of the single plot of ground situated at Nos. 144 to 150 West Twenty-Seventh street. His engagement was completely performed if he procured a purchaser who made a valid contract for such a plot. The proposed purchaser did make such a contract. It was not a mere option; for the purchaser would have been obliged to perform if the vendor could have given title to that plot. The right to reject was inserted only to show that the vendor was contracting to convey not two parcels but one plot, and the purchaser was released from his contract only if the vendor failed to comply with the terms to be carried out on his side.

The defendant, however, claims that the plaintiff was employed to sell the property which it owned, and it never obtained an enforceable contract for such sale. It relies upon the cases of Diamond & Co. v. Hartley, 38 App. Div. 87, 55 N. Y. Supp. 994, 47 App. Div. 1, 61 N. Y. Supp. 1022, Hausman v. Herdtfelder, 81 App. Div. 46, 80 N. Y.

Supp. 1039, and Keough v. Meyer, 127 App. Div. 273, 111 N. Y. Supp. 1. All of these cases stand simply for the proposition, where a broker is employed to sell a particular plot of land, he fails to meet his engagement by producing a party ready, able, and willing to purchase that plot, provided it has the dimensions which the vendor represented it to have, but not the dimensions which it actually has. His duty was to find a purchaser of the plot, and he has not fulfilled his contract of employment if for any reason he fails to produce such a purchaser. These cases have, however, no application to the present case, where the broker was apparently employed to sell a particular plot, and did sell that plot, but thereafter it appeared that the vendor did not own what he contracted to sell.

The case of Hough v. Baldwin, 50 Misc. Rep. 547, 99 N. Y. Supp. 545, and 53 Misc. Rep. 284, 103 N. Y. Supp. 133, apparently relied on by the court below, has also no application here. In that case the contract of sale contained a provision that:

"If the party of the second part rejects title on the ground of bay window or stoop ledge encroachments, then the deposit paid herein shall be returned in full for all claims."

The court there said:

"It is a reasonable inference from the evidence that both parties knew of the existence of these encroachments before signing the contract. * * * The plaintiff himself knew of this provision of the contract, and must have appreciated the possibility of the exchange not going through, and the natural disinclination of Baldwin to pay commissions unless the exchange was effected. At or about the time of the signing of the contract of exchange, he signed a writing in which he agreed to wait for his commissions until after the title was closed. This document, while perhaps not enforceable as an agreement for a lack of consideration, is strong evidence to show that the plaintiff as well as the defendant regarded the contract of exchange as a mere option, and not an absolute enforceable contract of exchange. Having obtained a customer who was willing merely to make a conditional contract of exchange, and not an absolute contract, I think the plaintiff did not earn any commissions."

Moreover, the court there expressly held that:

"In the absence of a special agreement, the encroachments referred to would not be a good ground for rejecting Baldwin's title."

If the plaintiff herein was employed to sell a single plot, then, having procured a contract for the purchase of that plot, which could be enforced by the defendant if it actually owned the plot, he has duly complied with the terms of his employment, and is entitled to his compensation.

Judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.